United States District Court
District of Massachusetts

```
_____
                               )
DENNIS FLETCHER,               )
        Petitioner,            )
                               )
        v.                     )   Civil No.
                               )   08-11392-NMG
THOMAS DICKHAUT, as            )
Superintendent of Souza        )
Baranowski Correctional Center,)
        Respondent.            )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

I. Background

This habeas petition arises out of petitioner's habitual offender conviction returned on October 15, 2002, in Massachusetts Superior Court.

**A. State court proceedings**

On October 11, 2002, a jury in the Massachusetts Superior Court for Middlesex County convicted Dennis Fletcher ("Fletcher") of breaking and entering and larceny. After a bench trial a few days later, he was found to be an habitual criminal, under M.G.L. c. 279, § 25 ("the habitual offender statute"), and sentenced to a term of between 10 and 20 years imprisonment. He is currently serving that sentence.

Over the succeeding six years, Fletcher appealed in state

courts.  In his first appeal, Fletcher challenged his convictions on the grounds that the evidence was insufficient to support a finding that he was an habitual criminal and that his standby counsel was ineffective for failing to request certain jury instructions.  The Massachusetts Appeals Court ("MAC") affirmed his convictions, Commonwealth v. Fletcher, 808 N.E.2d 1258 (Mass. App. Ct. 2004), and the Supreme Judicial Court ("SJC") declined review, 815 N.E.2d 1084 (Mass. 2004).

Petitioner then returned to Superior Court and filed a motion for a new trial.  The Superior Court declined to address his evidentiary insufficiency and ineffective assistance arguments because they had already been rejected by the MAC on direct appeal.  Because his remaining argument, i.e., that the trial judge did not adequately notify him of the consequences of proceeding pro se, was not raised on direct appeal, the MAC deemed it waived. Commonwealth v. Fletcher, 860 N.E.2d 702 (Mass. App. Ct. 2007).  Yet that Court addressed it anyway:

> The record amply establishes that the defendant's decision to represent himself (with standby counsel available for assistance) was knowing, intelligent, and voluntary. . . . The transcripts reveal that the judge conducted an exemplary colloquy with the defendant at the inception of the case, which then proceeded in two parts: a jury trial on the underlying offenses, followed, on the next business day, by a bench trial on the habitual offender charge. As the judge exhaustively explained the pitfalls of proceeding pro se when the case began, there was no need for him to reiterate this explanation when it continued into the second phase.

Id.  The SJC declined review without comment. 864 N.E.2d 22

(Mass. 2007). Finally, in 2008, the MAC denied Fletcher's third motion for a new trial on the basis that the issues raised in the motion were identical to those raised and decided on direct appeal. Commonwealth v. Fletcher, 886 N.E.2d 125 (Mass. App. Ct. 2008). Once again, the SJC declined review. 891 N.E.2d 237 (Mass. 2008).

**B. Federal court proceedings**

Petitioner's attempts to obtain habeas corpus relief in federal court have followed a tortuous and complex procedural route. Because tracing the path of that route is important to understanding the posture of this case and the pending motions, it will be done in some detail.

The instant petition for habeas corpus relief is actually Fletcher's second of two petitions which are closely related. On October 30, 2006, Fletcher filed his first petition seeking habeas relief on four grounds: 1) denial of right to counsel, 2) unconstitutional vagueness of the habitual offender statute, M.G.L. c. 279, § 25, 3) denial of right to appeal and 4) violation of equal protection in the application of the habitual offender statute to defendants in his situation ("the First Petition"). Recognizing that he had not exhausted his state remedies with respect to any of those claims, Fletcher simultaneously filed a motion to stay his petition pending exhaustion.

On February 27, 2007, the government moved to dismiss the

First Petition for non-exhaustion and filed an opposition to Fletcher's motion to stay. The Court denied the motion to stay in July, 2007, but did not explicitly rule on the motion to dismiss. Later that month, Fletcher filed a motion for reconsideration or, in the alternative, for a certificate of appealability ("COA"). This Court addressed the outstanding issues in a Memorandum and Order ("M&O") dated November 27, 2007 ("the November, 2007 M&O"). By that time, Fletcher had exhausted the first two of his four claims. In the spirit of indulgence toward pro se litigants and following Rhines v. Weber, 544 U.S. 269 (2005), the Court treated his petition as it stood that day, i.e., as a mixed petition containing both exhausted and unexhausted claims. The Court again declined to enter a stay and denied Fletcher's motions for a COA and for reconsideration. Nonetheless, the Court gave Fletcher the opportunity to salvage his petition by voluntarily dismissing the two unexhausted claims within 30 days of the Court order.

Fletcher responded by filing three documents in December, 2007. In essence, he stated his desire to proceed with all of his claims unless the Court "deem[ed] that procedure [would] bar [him] from doing so." In January, 2008, the government responded by filing a renewed motion to dismiss due to Fletcher's failure to comply with the straightforward instruction in the November, 2007 M&O. Fletcher opposed that motion and repeated therein his

desire to pursue all of his claims unless he was prevented from doing so.

On August 6, 2008, Fletcher filed a letter/non-motion which was docketed on the First Petition. He asserted that all four of his claims had been exhausted in light of a recent decision of the SJC. He also claimed that because the government's motion to dismiss was based on procedural grounds he should be permitted to file a petition "as if for the first time" once his claims were exhausted. To that end he "filled out the standard 2254 habeas petition in the event [he was] obligated to do so." That petition was treated by the Clerk's Office as an independent petition for habeas corpus and resulted in the opening of the instant case ("the Second Petition"). Not surprisingly, the Second Petition seeks relief on grounds substantially similar to those raised in the First Petition.

On September 26, 2008, this Court issued an M&O with respect to the First Petition ("the September, 2008 M&O"). Most significantly, the Court allowed the government's renewed motion to dismiss because Fletcher had not exercised either alternative afforded to him by the November, 2007 M&O. The case was subsequently closed and, on January 23, 2009, Fletcher filed a motion for a COA with respect to that order.

A notice of appeal was filed and an appellate case was opened with respect to the First Petition. At that point, Fletcher's

two petitions became intertwined and their procedural histories consequently became more complicated. Initially, in February, 2009, the First Circuit issued an order stating that an appeal of the dismissal of the First Petition could not proceed until this Court decided Fletcher's January 23, 2009 request for a COA.

Subsequently, the parties filed various pleadings with respect to the Second Petition. On April 24, 2009, Fletcher filed a "motion for withdrawal of issue" seeking to drop his fourth claim and a motion to supplement the record to add his signature to the Second Petition. On May 14, 2009, the government moved to dismiss the Second Petition on three grounds: 1) it was not signed by the petitioner, 2) it ought not proceed while Fletcher pursued his appeal of the First Petition based upon identical claims and 3) the fourth claim had not been exhausted. On June 3, 2009, Fletcher opposed the government's motion to dismiss, contending that his April 24 filings negated two of the three arguments for dismissal and, with respect to the pending appeal of the First Petition, he would withdraw his appeal if he were allowed to proceed on the Second Petition.

In the summer of 2009, the two petitions converged. With respect to the appeal of the First Petition, the First Circuit issued an order on June 23, 2009, stating that "[u]pon closer scrutiny, it is apparent that the district court denied a [COA] in its November 27, 2007 order." Accordingly, it instructed

Fletcher to file a request for a COA with the First Circuit by July 7, 2009. Presumably unaware of that order, Fletcher filed a "motion for clarification" asking this Court to clarify whether he would be allowed to proceed on the Second Petition if his appeal were dropped or if, instead, he risked losing his opportunity to present the merits of his claim altogether.

Simultaneously, Fletcher filed a status report in his appeal to the First Circuit. He included a copy of the motion for clarification filed in this Court and a "motion for leave to file for dismissal of appeal." The latter sought permission from the First Circuit to postpone prosecution of his appeal of the dismissal of his First Petition until this Court ruled on his Second Petition. Accordingly, on July 20, 2009, the First Circuit issued an order granting Petitioner's motion to "stay appellate proceedings [with respect to the First Petition] until the district court adjudicates [the Second Petition]." Finally, and superfluously, this Court denied Fletcher's January 23, 2009, request for a COA on July 31, 2009. On October 1, 2009, petitioner filed a "motion to be heard on the merits."

On March 5, 2010, this Court issued an M&O addressing the parties' outstanding motions ("the March, 2010 M&O"). The Court denied petitioner's motion for clarification and respondent's motion to dismiss and allowed petitioner's motion for withdrawal of issue, motion to supplement the record and motion to be heard

on the merits. Pursuant to the Court's order, both parties filed memoranda in support of their respective positions as to the merits of Fletcher's claims.

With that lengthy history in mind, the Court turns to the merits of petitioner's habeas petition.

## II. Legal Analysis

### A. Standard

A federal court sitting in habeas corpus review is not tasked with re-examining state-court determinations of state-law issues but rather "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Factual findings made by state courts on direct review are entitled to a presumption of correctness, 28 U.S.C. § 2254(e)(1), and state-law legal findings are binding, Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

Where, as here, the basis for a petitioner's application for a writ of habeas corpus was adjudicated on the merits in state court, the petition will be granted only if the state court adjudication:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### B. Application

Fletcher challenges his conviction on three grounds: 1) unconstitutional vagueness and evidentiary insufficiency of the habitual offender statute, M.G.L. c. 279, § 25 (Ground One), 2) denial of right to counsel (Ground Two) and 3) denial of due process (Ground Three). The Court will liberally construe Fletcher's petition in light of his <u>pro se</u> status. See <u>Haines</u> v. <u>Kerner</u>, 404 U.S. 519, 520-21 (1972) (per curiam).

#### 1. Habitual Offender Statute

Petitioner asserts that 1) the habitual offender statute should be struck down as unconstitutionally vague as applied to his conduct, 2) the Court should invoke the rule of lenity and construe the ambiguous statute narrowly and 3) the evidence was insufficient to support his conviction under the statute.

The Massachusetts habitual offender statute reads, in pertinent part, as follows:

> Whoever has been twice convicted of crime and <u>sentenced</u> and <u>committed</u> to prison in this or another state, or once in this and once or more in another state, <u>for terms of not less than three years each</u>, and does not show that he has been pardoned for either crime on the ground that he was innocent, shall, upon conviction of a felony, be considered an habitual criminal.

M.G.L. c. 279, § 25 (relevant portions underscored). The statute operates as a "three-strikes-and-you're-out" law and, although it provides for an arraignment and adjudication separate from the predicate crimes, it is characterized by Massachusetts courts as

a sentence enhancement, not a separate crime. Commonwealth v. Scott, 824 N.E.2d 487 (Mass. App. Ct. 2005).

While petitioner raises constitutional challenges to the statute, the essence of his claim is that the habitual offender enhancement was misapplied in his case. According to Fletcher, the statute is triggered only when a defendant is sentenced to terms in excess of three years for two prior convictions and <u>is actually committed</u> for at least three years on both occasions. A contrary interpretation, he explains, would read the word "committed" out of the statute. Because he served two years, eleven months, and four days for one of his previous convictions, and not a full three years, he maintains that the evidence was insufficient to support his habitual offender conviction.

The defendant's interpretation, while intriguing as a matter of statutory construction, has already been rejected by the SJC and the MAC:

> The defendant argues that the statute requires that one actually serve at least three years in prison on each prior felony conviction before one can be sentenced under the habitual offender statute. We disagree. A defendant must have been sentenced to at least three years on each prior felony, but release on parole before three years have been served will not defeat application of the statute.

See Commonwealth v. Tuitt, 473 N.E.2d 1103, 1111 n.11 (Mass. 1985); see also Commonwealth v. Allen, 494 N.E.2d 55, 62 (Mass. App. Ct. 1986) (holding that defendant's adjudication as a habitual offender was not dependent upon his having served at

least three years on each prior felony conviction, per the <u>Tuitt</u> decision); <u>Commonwealth</u> v. <u>Hill</u>, 478 N.E.2d 169, 171 n.5 (Mass. App. Ct. 1985) ("The contention that offenders must twice serve the minimum sentences described in G.L. c. 279, § 25, in order to be deemed habitual criminals is erroneous."). The SJC's construction of the statute is binding on this Court. <u>Bradshaw</u>, 546 U.S. at 76.

Petitioner attempts to distinguish his case from <u>Tuitt</u>, reasoning that parole, the break in imprisonment in <u>Tuitt</u>, is still a "commitment to prison" whereas discharge, the break in his case, "extinguishes all legal obligation." His effort, while creative, is unpersuasive. Webster's Collegiate Dictionary, 11th Edition, to which petitioner refers throughout his memorandum, defines "commit," in this context, as "to place in a prison or mental institution." "Parole," or, "the conditional release of a prisoner serving an indeterminate or unexpired sentence," is just as inconsistent with "commitment" as is "discharge," or "legal release from confinement." Thus, petitioner's situation is not factually distinguishable from that of the defendant in <u>Tuitt</u> and the MAC was correct to apply the rule set forth in that case.

Petitioner's vagueness and evidentiary insufficiency challenges fail for the same reasons. The key issue in assessing a vagueness challenge is

> whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time

that the defendant's conduct was criminal. United States v. Lanier, 520 U.S. 259, 266-67 (1997). As the above-cited cases make clear, Massachusetts courts had, by 1986, firmly rejected petitioner's reading of the statute. Because his predicate convictions arose from incidents occurring in 1990 and 2000, he was on notice when he committed those crimes that his conduct would trigger the enhancement.

Petitioner's evidentiary insufficiency challenge is likewise unavailing. Because the SJC is the final arbiter of the meaning of Massachusetts statutes, Ortiz v. Dubois, 19 F.3d 708, 713 n.5 (1st Cir. 1994) ("[T]he law of Massachusetts is what the SJC says it is."), this Court will defer to its judgment that a defendant is subject to the habitual offender statute if, on two prior occasions, he was 1) convicted of a crime, 2) sentenced to at least three years imprisonment, 3) committed to prison for some portion of that term and 4) not pardoned on the ground that he was innocent. See M.G.L. c. 279, § 25; Tuitt, 473 N.E.2d at 1111 n.11. Even petitioner acknowledges that he satisfies those criteria. Because a rational trier of fact could find beyond a reasonable doubt that Fletcher's two previous convictions for which he was sentenced to separate terms in excess of three years satisfied the elements of the statute, Fletcher's evidentiary insufficiency claim fails.

In sum, the rejection of petitioner's challenges to the

habitual offender statute by Massachusetts courts on direct appeal was proper and not contrary to, or an unreasonable application of, clearly established federal law and, therefore, petitioner is not entitled to habeas corpus relief on those grounds. See 28 U.S.C. § 2254(d).

### 2. Right to Counsel

#### a. Factual record

The record indicates, and Fletcher does not dispute, that he waived his right to counsel for trial on the underlying burglary and larceny charges, though standby counsel was appointed to assist him. Immediately after the guilty verdicts were announced and the jury was dismissed, the Court arraigned Fletcher on the habitual offender charges, with standby counsel present. At that arraignment, the Court instructed, "You'll need to tell me whether you intend to continue to represent yourself, Mr. Fletcher," and then proceeded to discuss the elements of the statute. Fletcher did not answer whether he intended to continue with self-representation but at no point did he object to doing so.

#### b. Application

Fletcher contends that the trial court's failure to appoint counsel at his arraignment on the habitual offender charges or to instruct him on the consequences of waiver denied him his right to counsel. In his reply brief, he cites Commonwealth v. Kulesa, 917 N.E.2d 762 (Mass. 2009), for the proposition that a

defendant's initial waiver of his right to counsel at trial does not, by itself, suffice to waive his right to counsel at the immediately subsequent habitual offender proceeding. In that case, the defendant waived his right to counsel at trial but expressly requested an attorney before his arraignment on the habitual offender charge and was not provided one. Id. at 769.

After reviewing the habitual offender statute which provides that a trial on a subsequent offender portion of an indictment be "subject to all the provisions of law governing criminal trials," the SJC held in Kulesa that the right to counsel extends to such proceedings. Id. at 770. The SJC went on to conclude that because the defendant requested, but was not afforded, the right to counsel in the habitual offender proceeding, his conviction must be vacated. Id. Fletcher claims that the Kulesa decision "renders moot any notion that the waiver of counsel made at prior proceedings applies to [an habitual offender proceeding]" and submits that his conviction must be vacated on that basis.

Petitioner's right to counsel claim was heard and adjudicated on the merits in state court, see Part II.A supra, so it will be reviewed by this Court under the deferential habeas standard. 28 U.S.C. § 2254(d). As the question of whether the petitioner made a knowing, intelligent and voluntary waiver of his right to counsel in state court is a mixed question of law and fact, the petitioner is entitled to relief only if the state

-14-

court unreasonably applied clearly established federal law. Yeboah-Sefah v. Ficco, 556 F.3d 53, 68 (1st Cir. 2009).

Because the MAC applied both state and federal law reasonably to the facts of this case, petitioner is not entitled to the habeas relief he requests. As clarified in the previous section, the habitual offender statute does not establish an independent crime but rather enhances a defendant's sentence for the predicate felony. Commonwealth v. Scott, 824 N.E.2d 487 (Mass. App. Ct. 2005). Similarly, the proceeding to determine whether a defendant is an habitual offender is not considered a separate trial but rather is viewed as the second, sentencing phase of a single, bifurcated trial. Commonwealth v. Pelletier, 868 N.E.2d 613, 617 (Mass. 2007). Massachusetts law does not require that a defendant affirmatively waive the right to counsel at each phase of a trial, only that if a defendant invokes the right to an attorney at a sentencing phase, the Court must appoint one. Unlike the defendant in Kulesa, who invoked his right to counsel at the habitual offender proceeding, 917 N.E.2d at 769, Fletcher never affirmatively requested counsel and his actions during the remainder of the arraignment are consistent with a desire to continue self-representation. The MAC was therefore correct in holding that his right to counsel under Massachusetts law was not infringed.

Nor does clearly established federal law compel the

application of a different rule.  Federal circuit courts are unanimous in holding that "a defendant's waiver of counsel at trial carries over to subsequent [sentencing] proceedings absent a substantial change in circumstances." United States v. McBride, 362 F.3d 360, 367 (6th Cir. 2004); see also United States v. Unger, 915 F.2d 759, 762 (1st Cir. 1990); United States v. Fazzini, 871 F.2d 635, 643 (7th Cir. 1989); Panagos v. United States, 324 F.2d 764, 765 (10th Cir. 1963); Davis v. United States, 226 F.2d 834, 840 (8th Cir. 1955).  As those courts point out, while it is true that the right to counsel applies at all critical stages of the prosecution, including, as the SJC held in Kulesa, habitual offender proceedings, it does not follow that once the assistance of counsel in court has been competently waived, a new waiver must be obtained at every subsequent court appearance by the defendant.

Before trial in this case, the judge conducted a thorough colloquy with Fletcher during which he exhaustively explained the many pitfalls of proceeding pro se and concluded by remarking,

> Mr. Fletcher, it's your right [to represent yourself], and I'll grant it to you, if you wish, but I would be deficient in my duties as a Judge if I didn't point out to you in the most emphatic way that I can that I think you're making a terrible mistake.

The judge then afforded Fletcher time to think over the decision and discuss it with counsel.  The next day, Fletcher reiterated that he wished to waive his right to counsel and proceed pro se.

-16-

Ever solicitous of Fletcher's rights, the judge appointed standby counsel and made clear that Fletcher could decide to appoint an attorney "at any point" during the case.  The judge reminded Fletcher of that right once more before the habitual sentencing phase, yet Fletcher declined to exercise it.  Far from violating Fletcher's Sixth Amendment rights, the trial judge did everything in his power to protect them.

### 3. Denial of Due Process

Fletcher's final claim is that he was denied the right to meaningful review on appeal because the MAC mischaracterized and failed adequately to address the merits of each of his arguments.

Putting aside whether a petitioner would be entitled to relief on that basis as a matter of law, the record indicates that the Massachusetts courts carefully considered the merits of Fletcher's arguments and clearly explained their reasoning.  Petitioner's misunderstanding of the governing law or disagreement with their reasoning does not entitle him to relief.

### ORDER

In accordance with the foregoing, Fletcher's Second Petition for Writ of Habeas Corpus is **DISMISSED**.

**So ordered.**

<u>/s/ Nathaniel M. Gorton</u>
Nathaniel M. Gorton
United States District Judge

Dated November 15, 2011